And we'll hear the final matter on today's oral argument calendar, SING v. Board of Immigration Appeals 17883. Thank you. Good morning, Your Honor. My name is Michael Piston. I represent the plaintiff appellate in this case, Suquinder Singh. The Board of Immigration Appeals upheld the USCIS District Director's denial of Mrs. Singh's petition upon behalf of her husband, Balbir Singh, because it found that Mr. Singh was barred from being the beneficiary of a visa petition by 8 U.S.C. 1154C on the grounds that over 30 years ago, he entered into a marriage with a U.S. citizen, a Doris McWilliams, which was supposedly for the purpose of improperly obtaining immigration benefits. You would agree that if that were true, you lose? Absolutely. And so it doesn't matter when it occurred? That's correct. It doesn't have to be the present marriage or anything of that sort. Any prior sham marriage would be a disqualifier. Absolutely. Tell us why the evidence here is not overwhelming that there was a marriage fraud. Because the Board of Immigration Appeals ruled in matter of topic that a finding of ineligibility under Section 204C cannot be based upon inferences. It must, as the Court of the Circuit in Simcoe v. Board of Appeals said, as one U.S. district has said, in the decades since matter of topic was decided, the Board has maintained this policy of request. If the government goes and gets records of rentals and to see whether there's two names on the lease, looks at mail, looks at matters of that sort to see whether there's indicia of whether they're living together or not living together, would you call those all inferences? Absolutely. I certainly would, Your Honor. Okay. So that's where we differ. That seems like direct evidence from which the government can then conclude. If a couple is not living together, then I can't… Your Honor, you've just made an inference. You've just made an inference that because there is no evidence available that this couple is living together. No, there's a combination of factors if we're looking at this case. We're looking at the testimony of Mr. Robinson's father. His purported father. The inspector didn't even ask the man for identification. Right. So they have that testimony. They have various other documents that they've looked at. No documents, Your Honor. There is no documentary evidence at all supporting the finding here. Well, there's documents that contain absence of information, and your argument is, I take it, but you have to draw an inference in order to reach that conclusion. They inferred from the fact that Mr. Singh… Mr. Piston, is what I said correct? You need me to repeat it? Yes, please, Your Honor. Well, actually, let me approach it a slightly different way. What would be evidence in your view that is cognizable under matter of topic? Not only in my view, Your Honor, but more importantly under the board… How about your view? Evidence, for example, that one of the parties admitted to have been paid by the marriage. Direct evidence that the parties were not living together. And then that person would have to be marched into the proceeding and testify with live testimony. Otherwise, one's drawing an inference from something somebody said to somebody, right? Basically, you're requiring that there be an admission under matter of topic. Otherwise, nothing else is cognizable, right? The Board of Immigration Appeals has ruled on numerous different times that the factors which will constitute direct evidence that are normally considered evidence of marital fraud are evidence that one of the parties was paid, evidence that the parties were not living together. What is that direct evidence that the parties are not living together? What would that be? For example, if the inspector in this case had gone to the place where the parties claimed to live together and not found evidence of two people residing there, the inspector here, the only place he went to was the address of the… I thought you just told us that the lack of evidence is insufficient because that necessarily requires an inference. But if an inspector goes and sees no evidence, that's enough. I would say that, yes. I would concede that. I would concede that if there was a site visit to the marital home and the site visit made it clear that the parties were not living together, I would say if the parties admitted to not living together, I would say if there was witnesses showing that the parties didn't live together, that would be direct evidence. But in this case, we have none of these. The investigation never went to the marital home. The investigation went to the home of the prior wife's purported boyfriend and spoke with a neighbor who said that the prior wife was in and out of the prior boyfriend's residence and this person who claims to be the boyfriend's husband, the father who says that they're living together in what he considers to be a common law marriage, of course, common law relationship, of course, no definition of what he considers to be a common law relationship. At best, the evidence may show that the prior wife was having an affair. But to turn the conclusion that the prior wife is having an affair into determination that the beneficiary, her husband, is engaged in marital fraud, we actually have to engage in numerous inferences. First of all, we have to infer from the facts that were given to us that she was having an affair. Second, we have to infer that a person who engages in an affair during a marriage entered into that marriage in bad faith. Now, that's a very striking, that's a very big inference, given the fact that at least 40% of wives and 60% of all husbands engage in affairs during the relationship of marriage. But then on top of that, on top of these other inferences, we now have to also infer that because Doris Singh, the U.S. citizen wife here, did not enter into the marriage in good faith, therefore Mr. Singh did not enter into the marriage in good faith, rather than Mr. Singh being the innocent victim of a cheating wife. And as a matter of fact, there's been cases that have been specifically held that the mere fact that one of the parties is not entered into the marriage in good faith is not evidence that the other one is entered into the marriage not in good faith. So these are all inferences upon which the court must, which the CIS engaged in, all directly contrary to the holding of the Board of Immigration Appeals in matter of TOFAC. Now, maybe this court doesn't like matter of TOFAC, maybe they think that's a bad decision. But this is the controlling case of the Board of Immigration Appeals. And this is what this court is held by under Chevron. Furthermore, another thing which is really quite erroneous in this case is the fact that the plaintiffs did, in fact, come up with substantial evidence that the marriage was entered into in good faith. And you came up with four witnesses who knew the parties at this time. And the board rejected their evidence because they said, quote, we can't consider affidavits from witnesses unless there is primary evidence that the marriage was entered into in good faith. Not only is there no evidence whatsoever to support those statements, but, in fact, both the Third and the Seventh Circuit have both held that uncorroborated statements by one of the parties to a marriage can be sufficient to carry the petition or carry the burden of proof that the marriage was entered into in good faith. And all of the board commented offhand that there was no credible statements from friends. They provided no evidence whatsoever that the statement of the friends weren't credible. The district director didn't find it credible. And, therefore, the board had no authority to engage in independent fact-finding to find incredible people that the district director didn't find credible. Thank you very much. You've reserved two minutes for rebuttal. We'll hear from Mr. Waterman. Good morning, Your Honors. Your Honors, may it please the Court, Brandon Waterman with the U.S. Attorney's Office on behalf of the government. This Court should uphold the Board of Immigration Appeals' decision finding that the record contained substantial and probative evidence of fraud concerning Balbir Singh's first marriage. The evidence in the record as a whole, as the Court should be looking at it, shows inconsistent interview answers, a lack of documentary evidence that would support the validity of a marriage, as well as evidence of an INS fraud investigation, which, as we heard, contains statements from a superintendent of a building that Balbir Singh's supposed wife was in a common-law relationship and living with at that time and for the past three years, the superintendent's son of that building. Based on the totality of the evidence in the record . . . says that this is just a mere inference. Can you just address that? Yes, Your Honor. There was no . . . the Board of Immigration Appeals did not rely on a mere inference in this case. All of these facts, the inconsistent answers to questions that were key and fundamental to the elements or to demonstrating the validity of a marriage, those inconsistent answers is evidence. The lack of documentary evidence is also important in deciding whether there is substantial probative evidence. They don't necessarily rely on inferences here. An inference is something much, much weaker than what this evidence as a whole contains. The INS fraud investigation is not an inference. That is evidence that was compiled by an INS investigator who went out to a site and interviewed witnesses. That is all evidence. In the record, again . . . It says that they didn't interview the marital home. They didn't go to the marital home and interview people. They went to the Robinson home, and that's a problem for you. Well, Your Honor, the Robinson home was Doris McWilliams' old address. That's the address that she used to live at when she met Balper Singh. And that, according to the witnesses that were interviewed, the superintendent of the building and a neighbor, both witnesses independently corroborated the fact that Doris McWilliams still lived in that apartment with Anthony Robinson, and that she had lived there for at least three years, dating back . . . Was it a separate apartment or separate residence in which the other . . . Mr. Singh lived? Correct. He lived down at, I think it was a Brighton Beach address in Brooklyn. And no one ever visited that home? I don't see that in the record, Your Honor. But again, the lack of that evidence in the record does not . . . Did she ever claim that she was living there? That she was living in the Brighton Beach address? No. Yes, Your Honor. Yeah. She did. She claimed that the two lived together, and I believe Balper Singh also alleged that the two lived together. The bottom line is, the INS investigator who spoke with and investigated those claims, spoke with the superintendent of the building and an independent neighbor. Both those accounts come up with the same result. And that is, Doris McWilliams was living in that apartment with Anthony Robinson for at least the past three years. That's dating back to 1984 through 1987. Balper Singh and Doris McWilliams married in July of 1984. The evidence, again, in the record as a whole . . . There's also evidence, is there not, from someone who said that he was his father, Robinson's father? That's correct, Your Honor. That's the superintendent of the building. Oh, he's the superintendent. He's the superintendent of the building. That is also Anthony Robinson's father. So, there's ample evidence in this record for the court to conclude that the agency properly determined that substantial and probative evidence supported the finding of marriage fraud. And, unless the court has any further questions, I respectfully ask that the court affirm the agency's decision. Thank you. Mr. Piston. Your Honor, the statements of the witnesses are far less conclusive than what the government would have you believe. The neighbor that was to talk said merely that Doris Singh was in and out of Anthony Robinson's apartment. What does that mean, in and out? I mean, it could mean any number of things. With respect to the Brighton Beach . . . That was with respect to the . . . I haven't finished my question, so hold on one second because you may be answering a different question. You don't want to do that. With respect to the Brighton Beach address, was there any evidence that Ms. McWilliams lived there other than the name on the lease? Yes, the statements of four witnesses. So the statements of the four witnesses and the name on the lease, and that was it? Yes. Again, absence of evidence is to conclude because the parties did not have evidence 30 years after the fact that he lived with his wife is evidence that he did not, is another classic example of inference. But how does the courts define inferences? They say it is an inference. An inference is a logical conclusion drawn from facts. That was from Webster's Dictionary, quoted in Adams v. Kinder Morgan in Contempt Circuit Decision. And that's all this case is. It's inferences drawn from facts and not very strong ones. I'm very familiar with the classic form of jury instruction that if someone walks in here and a series of people come in here and they've got umbrellas that are wet, you can infer that it's raining outside. Is that an improper inference in the context of a review of an immigration decision? I would say that, Your Honor, the Board of Immigration Appeals recognizes what a drastic penalty this is, and therefore was well within its rights in sending an extremely high standard of proof, which is what it established in matter of topic. Thank you very much. We'll reserve the decision. That concludes today's oral argument calendar, and court is adjourned. Court is adjourned.